UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN S. TUCKER, | : | PRISONER |
| *Plaintiff*, | : | CIVIL NO. 3:02CV1357(WWE)(HBF) |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN MAURICE BUTLER, ET AL, | : | |
| *Defendants* | : | AUGUST 4, 2004 |

**STATEMENT OF MATERIAL FACTS AND
LOCAL RULE 9(C)(1) STATEMENT IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule 56 and Rule 9(c) of the Local Rules of Civil Procedure, the defendants[1], Captain Maurice Butler, Lt. Lloyd, Captain Kim Weir, Nurse Hill, C.O.'s Taylor, Lindsey, O'Dell, Perkins, Melbourne, Castonguay, and Nurse Practitioner Saundra Katz Feinberg, respectfully offer the following statement of material facts in support of their Motion for Summary Judgment.

1. On or about August 6, 2002, the plaintiff filed the instant Complaint against the above identified defendants. Exhibit A[2].

2. At all times relevant to the plaintiff's Complaint, the plaintiff was an inmate in the custody and control of the Connecticut Department of Corrections and housed at Northern Correctional Institution, and the defendants were employees of the Connecticut Department of Correction . Exhibit A, para.'s 3 – 13.

3. On January 8, 2002, Defendant Maurice Butler came to the plaintiff's cell door in response to the plaintiff's cellmate Morris Neal's holding of the food door trap open. Exhibit A, para.'s 22 – 23. When Defendant Butler arrives, inmate Neal told him that he and the plaintiff

---

[1] The undersigned represents all defendants in their individual and official capacity, except defendants Perkins and Hill, who are represented only in their official capacity.
[2] Exhibit A: Plaintiff's Complaint.

did not get along and could not live together. He also told him that he was scheduled to be released in two weeks and did not want to have any problems with the plaintiff during that time. Exhibit A, para. 23.

4. Defendant Butler told inmate Neal that if he wanted a cell change, he had to comply with the Department of Correction procedure which required him to file an inmate request form requesting a cell change. Exhibit A, para. 25.

5. Later that day, between the hours of 3:30 p.m. and 4:15 p.m., the plaintiff and his cellmate Neal were offered the opportunity to shower, but the plaintiff refused. Inmate Neal accepted and was escorted out of his cell to the shower. Upon returning inmate Neal to the cell, the plaintiff was secured in handcuffs before the cell door was opened. After the cell door was opened, inmate Neal was escorted inside by C.O. Daire and C.O. Lindsey who then removed his leg irons, but left him handcuffed behind his back while they exited the cell. Once the cell door was secured, the plaintiff backed up to the food slot on the cell door first, at which time his handcuffs were removed by one of the C.O.'s outside the cell door. After the plaintiff was uncuffed, he would not let inmate Neal get to the trap door to get his handcuffs removed. Exhibit B[3], pg. 3.

6. While the plaintiff prevented inmate Neal from approaching the cell's trap door he told C.O.'s Daire and Lindsey that they "had better get the brass". C.O. Lindsey left to notify a supervisor of the situation while C.O. Daire remained at the cell door. Immediately after C.O. Lindsey left, plaintiff suddenly attacked inmate Neal and began stabbing him repeatedly with a Bic style pen while Neal was defenseless with his hands still handcuffed behind his back. C.O. Daire immediately called a code blue. and ordered the plaintiff to stop his assault, but was ignored. Exhibit B, pg. 1. The plaintiff continued to attack inmate Neal until additional staff

---

[3] Exhibit B: Department of Correction Incident Report dated January 8, 2002, pages 1 - 21. (Business record).

responded and were able to enter the cell and separate the two men. Exhibit A, para. 30, 44, 46; Exhibit B, pg. 1.

7. To separate the two men, several officers took hold of inmate Neal and secured him safely against a wall, while officer Daire grabbed the plaintiff by the upper torso and began moving him toward the door. Correctional Officer Lindsey assisted him by pushing the plaintiff to remove him from the small cell. Once on the tier, he was escorted to the prone with the additional assistance of C.O.'s O'Dell, and Castaguay, the latter of whom secured the plaintiff's legs. Exhibit B, pg. 1, 7; Exhibit C[4]; Exhibit D[5]. As soon as the plaintiff was secured in the prone position, he was placed in restraints. C.O. Howes applied leg irons and a tether chain on the plaintiff, and another C.O. applied handcuffs. Exhibit E[6]. Lt. Lloyd was present and gave verbal directions to the plaintiff and staff, but did not participate in the removal of the plaintiff from his cell or his takedown to the tier floor. Exhibit F[7].

8. After the plaintiff was secured in restraints, Lt. Lloyd directed Correctional Officers Lindsay and O'Dell to assist the plaintiff to his feet, whereupon he was escorted to the medical screening room for evaluation by the medical staff. Exhibit B, pg. 12; Exhibit G[8]. When the plaintiff arrived in the medical unit at approximately 4:30 p.m., he was examined by RN Michael Lyman and treated for superficial wounds to his lower lip, nose, right side of his forehead, and knuckles. Exhibit H[9]. The plaintiff was then interviewed by Lt. Lloyd about the reason for the assault on inmate Neal. The plaintiff stated that he felt threatened by Neal, but admitted that he had not told any supervisor about the threat. Exhibit I[10]

---

[4] Exhibit C: C.O. P. Castonguay's Use of Force Report, dated 1-8-02.
[5] Exhibit D: C.O. Daire's Use of Force Report, dated 1-8-02.
[6] Exhibit E: C.O. Jeremy Howes' Use of Force Report, dated 1-8-02.
[7] Exhibit F: Lt. Lloyd's Use of Force Report, dated 1-8-02.
[8] Exhibit G: C.O. O'Dell's Use of Force Report, dated 1-8-02.
[9] Exhibit H: Medical Incident Report for the plaintiff Kevin Tucker, dated 1-8-02.
[10] Exhibit I: Video.

9.     Lt. Lloyd asked the plaintiff where he was hurt, and the plaintiff responded "in the head". This was his only complaint. The plaintiff did not state that he was subjected to the use of excessive force during his takedown, or that he was kicked in the ribs, kneed in the back, or had his finger bent. Exhibit B, pg. 7; Exhibit I. The plaintiff also exhibited no difficulty and expressed no feelings of pain when he was walking, sitting, or standing. Exhibit I.

10.    After his medical exam was concluded, the plaintiff was removed from the medical unit and escorted by Officer Lindsay and others to cell-103 for a strip search and in-cell placement. Exhibit B, pg. 12.

11.    Meanwhile, inmate Neal was escorted to the medical unit. Upon examination, the injuries inflicted upon him by the plaintiff included a 2.5 cm laceration below the right temple, a small laceration inside his mouth, two puncture wounds to the back of his neck, two puncture wounds to his upper back, and one puncture wound to his shoulder. Exhibit I; Exhibit J[11]

12.    As a result of his assault on inmate Neal, Lt Lloyd placed the plaintiff on In-Cell Restraint Status and on a fifteen minute watch. Exhibit B, pg. 5. The plaintiff was issued a new mattress, new underwear, new t-shirt, new jumpsuit, new bed linens, and placed on modified meal status per Unit Directive 9.4.1 Restrictive Status. Exhibit B, pg. 5. The plaintiff was also issued a class "A" disciplinary report for Assault. Exhibit B, pg. 6.

13.    Later that evening, at approximately 7:30 p.m., the plaintiff was examined again, this time by C.M. Dudley RN, while in his in-cell restraints and was found to have no additional injuries, and the plaintiff made no complaints of any. Exhibit K[12].

---

[11] Exhibit J: Medical Incident Report for inmate Morris Neal, dated 1-8-02.
[12] Exhibit K: Medical Incident Report of the plaintiff Kevin Tucker, dated 1-8-02, 7:30 p.m.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN S. TUCKER, | : | PRISONER |
| *Plaintiff*, | : | CIVIL NO. 3:02CV1357(WWE)(HBF) |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN MAURICE BUTLER, ET AL, | : | |
| *Defendants* | : | AUGUST 4, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by the plaintiff, Kevin Tucker, against Captain Maurice Butler, Lt. Lloyd, Captain Kim Wier, Nurse Hill, C.O.'s Taylor, Lindsey, O'Dell, Perkins, Melbourne, Castonguay, and Nurse Practitioner Saundra Katz-Feinberg of the State of Connecticut Department of Correction.

In his First Cause of Action, the plaintiff alleges that Defendant Butler violated his Eight Amendment rights by failing to provide the plaintiff with a new cell after he allegedly complained that he feared his current cellmate Morris Neal, thereby endangering his life and subjecting him to the use of excessive force by other correctional personnel during his takedown after he assaulted inmate Neal.

In his Second Cause of Action, the plaintiff alleges that Correctional Officers Lindsey, O'Dell, Perkins, Melbourne, Taylor, Lloyd, and Castonguay, used excessive force when they body slammed him to the floor after he assaulted inmate Neal, thereby causing injuries to his face and head.

In the Third Count of his Complaint, the plaintiff alleges that his Eighth Amendment rights were violated when Nurse Practitioner Saudra Katz-Feinberg and Nurse Hill denied him

medical treatment in the form of x-rays by their refusal of his requests until she was ordered to do provide them by her supervisor in response to the plaintiff's written requests.

In his Fourth Cause of Action, the plaintiff alleges that Correctional Officer O'Dell violated his Fourth Amendment rights by applying pressure to the plaintiff's right hand after taking the plaintiff down to the prone position for failing to comply with orders to stop resisting, which resulted in a fractured bone and finger.

In his Fifth Cause of Action, the plaintiff alleges that all of the defendants were aware of the violations to the plaintiff's constitutional rights and conspired together to cause the plaintiff bodily harm.

This motion, filed on behalf of all of the defendants, seeks summary judgment in their favor, as the undisputed facts demonstrate that the allegations in the plaintiff's Complaint do not constitute a violation of the Eighth Amendment because the use of force to subdue the plaintiff was reasonable under the circumstances as he was the aggressor in the assault, and the force used was only that necessary to overcome his resistance.  In addition, his medical indifference claims under the Eighth Amendment are equally without merit since the plaintiff received prompt and thorough medical attention for his superficial injuries and he made no complaint about any injury to his hand or finger which would have otherwise alerted any medical personnel to the potential need for an x-ray.  In any event, his injuries did not constitute a serious medical need, and any claims of negligence are barred by sovereign immunity.  Finally, because the actions of the defendants were reasonable under the circumstances, even if the violated one or more of the plaintiff's constitutional rights, (which they didn't), they are nonetheless entitled to qualified immunity.

## **STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.*  In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact*."* *Samuels v. Smith,*  839 F.Supp. 959,962 (D.Conn. 1993). (Emphasis added).

Despite any of the above, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256, 106 S.Ct. at 2510; *see also, Knight v. United States Fire Insurance Co.,*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).  Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of

material fact, the nonmoving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be little more than harassment." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970). And the defense of qualified immunity is not merely a defense to liability, it is an immunity from suit. *Saucier v. Katz*, 121 U.S 2151, 150 L.Ed. 2d 272. 2001 U.S. LEXIS 4664 (June 18, 2001).

When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.,* 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720 (S.D.N.Y. 1941).

**I.     DEFENDANT BUTLER WAS NOT DELIBERATELY INDIFFERENT TO THE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS**

The plaintiff's allegations in his First Cause of Action, that Defendant Butler failed to protect him from assault from another inmate, namely, his cellmate Morris Neal, is groundless in both law and fact. Simply put, the plaintiff cannot bring a claim for failure to protect when it was he who was the aggressor. Indeed, it was the plaintiff who assaulted another inmate, not the other way around. And not only did the plaintiff assault Morris Neal, he did so when Neal was handcuffed behind his back and unable to fight back.

While it is true that in circumstances where there is a known risk of potential harm between inmates, prison administrators "are under an obligation to take reasonable measures to guarantee the safety of inmates", but this rule is not without limitation. *Hudson v. Palmer*, 468 U.S. 517, 526-7 (1984). In 1994, the Supreme court noted, "[i]n particular, as the lower courts have uniformly held, and as we have assumed, prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "It is not however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id at 834*. Thus, for the plaintiff to establish an Eighth Amendment violation against a prison official, he first and foremost must have been the victim of an assault. Since the plaintiff was not, Defendant Butler could not have violated his Eighth Amendment rights.

In addition, even assuming arguendo, that Defendant Butler could still be responsible for the plaintiff's assault on inmate Neal, which he cannot, the plaintiff still cannot establish a

violation of his Eighth Amendment rights, because he cannot satisfy the other two requirements of the legal standard: (1) that the injuries caused by the assault were serious, and (2) that Defendant Butler had a sufficiently capable state of mind." *Farmer v. Brennan*, at 834; *see also, Hayes v. New York City Department of Correction*, 84 F.3d 614, 620 (2d Cir. 1996). As the facts demonstrate, not only was the plaintiff the aggressor, but he the injuries he suffered were not serious, even if the Court included in its determination the injuries resulting from the force used to break up the fight and gain control over the plaintiff. Finally, the facts do not support the plaintiff's allegation that Defendant Butler had a "culpable state of mind", especially given that the plaintiff was the aggressor. Therefore, Defendant Butler did not violate the plaintiff's constitutional rights and is entitled to summary judgment.

II.     **THE PLAINTIFF WAS NOT SUBJECTED TO THE USE OF EXCESSIVE FORCE IN VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS**

The plaintiff also cannot prove any of the allegations in his Second or Fourth Cause of Action; that the defendants subjected him to the excessive force use of force, because they did not. Although the defendant s do not dispute that some force was used, the use of force under the circumstances was not only reasonable, it was necessary. At the time the defendants acted, the plaintiff was in the midst of a violent stabbing attack on his handcuffed cellmate Morris Neal. Inmate Neal had not way to protect himself from the plaintiff's attack. The plaintiff had been given several direct orders to stop his assault but he refused. The defendants had no option but to enter the cell and separate the men physically as they did. Of course force was used. But, the amount of force used was only that which was necessary to overcome the actions of the plaintiff. In fact, his relatively minor injuries; namely a bloody lip and scrape to the side of his head, is the best evidence of the limited amount of force used. Moreover, if the defendants had assaulted the

plaintiff in the manner he alleged in his Complaint, his injuries would have reflected that and been far more serious.  The absence of such injuries is however, telling.  Furthermore, if the defendants had not used any force, inmate Neal would likely have suffered far more serious injury, and the inaction by the defendants may very well have constituted a violation of Neal's constitutional rights, something that the defendants would not have stood by and let happen. And, given the violent actions of the plaintiff, if the defendants did not physically take control of him, he very well may have attacked the defendants and caused them injury as well. Clearly, the purpose of the use of force in this circumstance was to gain control of the plaintiff and restore discipline.  *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

Also, the mere fact that the plaintiff was injured however, does not constitute per se excessive force, nor does the fact that force was used, constitute a per se violation of the plaintiffs constitutional rights.  *Hudson v. McMillan*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed. 2d 156 (1992).  Allegations of being "bumped, grabbed, elbowed and pushed" by correctional officers do not approach a constitutional claim.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).  "Indeed, not even 'every malevolent touch by a prison guard gives rise to a federal cause of action.' *Hudson*, 503 U.S. at 9."  *Id.*

In *Hudson v. McMillian*, the Supreme Court clarified the standards for determining whether Eighth Amendment violations have occurred:
> officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.  Despite the weight of these competing concerns, corrections officials must make their decisions "in haste, under pressure, and frequently without the luxury of a second chance."  475 US, at 320, 89 L Ed 2d 251, 106 S Ct 1078 . . . .  whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Id.* at 6, 7, 112 S.Ct. at 999 (1992).

In addition, when examining an Eighth Amendment claim, a court should consider both the "objective" and "subjective" components of an alleged violation. *See Hudson*, 503 U.S. at 8, 112 S.Ct. at 999. The objective component relates to the level of force physical force used and whether it is repugnant to mankind. *Id*. at 9-10, 112 S.Ct. at 1000. The subjective component relates to whether the defendants had a "wanton" state of mind when they were engaging in the alleged misconduct. *See Id*. at 8, 112 S.Ct. at 999; *Wilson v. Seiter*, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).

The Court indicated in *Hudson* that:
> Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 US, at 321, 89 L Ed 2d 251, 106 S Ct 1078. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Ibid*. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Hudson*, 503 U.S. at 7, 112 S.Ct. at 999 (quoting *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Because the defendants did not act maliciously, wantonness has not been established and a constitutional violation has not occurred. *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Indeed, the defendants acted in a good-faith effort to maintain and restore discipline and to gain control of a violent inmate, so no constitutional violation has occurred because the subjective component of the claim has not been satisfied*. Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the

> occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, *the extent of injury inflicted*, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson*, 481 F.2d at 1033 (emphasis added).

Finally, the actions of the defendants were in accordance with the use of force policies and procedures of the Department of Correction. As set forth herein, the law is clear that "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22, 89 L. Ed. 2d 251, 106 S. Ct. 1078, 1085 (1986) *citing Bell v. Wolfish*, 441 U.S. at 547, 99 S.Ct. at 1878.

Therefore, because the circumstances warranted the use of force, and the use of that force was reasonable, all defendants involved are entitled to summary judgment.

### III.  THE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS WERE NOT VIOLATED BY ANY OF THE DEFENDANTS

In order to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the constitution or laws of the United States." *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993). In addition, a plaintiff must demonstrate that his injuries were proximately caused by the defendant's violation of law. *See Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998). Although the defendants have admitted the first prong of the claim, that they were acting under the color of state law, the plaintiff cannot establish the

second prong, that he was denied a right, privilege or immunity secured by the Constitution or laws of the United States. Thus the defendants are entitled to summary judgment.

Simply stated, the facts do not support the plaintiff's allegations in the Third Count of his Complaint, that Nurse Practitioner Sandra Katz-Feinberg and Nurse Hill were deliberately indifferent to his serious medical needs. First of all, the plaintiff was provided with medical attention immediately after he assaulted inmate Neal. At the time of his physical examination, the only injuries that were noted were a bloody nose, lip and scrape on the side of his head: injuries consistent with an escort to the prone position on the tier floor. What is most notable about the medical report however, is the absence of any notation, complaint, or visible injury to the plaintiff's ribs, back, or fingers. The plaintiff made no complaint of any injury other than to his head, and no other injuries were noticeable upon observation. As a result, there was no medical basis to order x-rays. Without a complaint, the nurses could not have been aware of an injury, and thus could not have deliberately ignored a medical need of the plaintiff. *See, LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d. Cir. 1998) ("To succeed in showing deliberate indifference, [plaintiff] must show that the acts of defendants involved more than lack of due care, but rather involved obduracy and wantonness in placing his health in danger").

Moreover, as soon as the x-rays were ordered by the doctor, the x-rays were provided and the plaintiff received prompt medical attention when an injury was confirmed. Since the plaintiff was not denied medical attention at any time when an injury became known, his claims must fail. In addition, any chronic pain he allegedly suffered from until he was treated, while perhaps painful, does not constitute a *serious* medical need.

In order to establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] **serious** medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291 (1976) (Emphasis added). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a "barbarous act."

*McCloud v. Delaney*, 677 F.Supp. 203, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." *Tomarkin v. Ward*, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting *Estelle*, 429 U.S. at 105-06).

Furthermore, there are both subjective and objective components to the deliberate indifference standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert. denied sub nom. Foote v. Hathaway,</u> ___ U.S. ___, 115 S.Ct. 1108 (1995). Objectively, the alleged deprivation must be "sufficiently serious".. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway, supra*, 37 F.3d at 66 (quoting *Nance v. Kelley*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). *See, e.g., Hathaway v. Coughlin*, 841 F.2d 48 (2d Cir. 1988) (broken pins in hip); *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); *Martinez v. Mancusi*, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), *cert. denied*, 401 U.S. 983 (1971). However, not all medical conditions, however, are considered "serious." *See, e.g., Jones v. Lewis*, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw not considered serious); *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1988) (kidney stones not serious); *Glasper v. Wilson*, 559 F.Supp. 12 (W.D.N.Y. 1982) (bowel problems not serious need medical need). And subjectively, the prison official must have acted with "a sufficiently culpable state of mind." *Hathaway v. Coughlin, supra*, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994)).

As the facts demonstrate, the plaintiff cannot meet his burden of proof. The facts do not support any of the claims he has made against Defendant Katz-Feinberg or Hill and thus they are entitled to summary judgment.

IV. **DEFENDANTS WEIR, TAYLOR, PERKINS AND MELBOURNE HAD NO PERSONAL INVOLVEMENT IN HANDLING THE PLAINTIFF IN THE CELL OR WITH HIS MEDICAL CARE THEREAFTER**

The plaintiff's Complaint names four defendants, Weir, Taylor, Perkins and Melbourne, who did not have any personal involvement in any of the incidents alleged in the plaintiff's Complaint. Other than being employees of the Connecticut Department of Correction, these defendants had no involvement in any of the alleged incidents and as a result, deserve summary judgment.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (*quoting* 42 U.S.C. § 1983). Where damages are sought in a §1983 action, the defendant must be responsible for the alleged constitutional deprivation. Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under §1983. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor*, 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978). Consistent with the requirement that personal involvement is required for a claim under §1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under §1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95(1978). Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of the defendants sufficient to support

their liability for wrongful acts," not merely their "linkage in the . . . chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability. *Williams v. Smith*, 781 F.2d 313, 323 (2d Cir. 1986); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974). A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation. *Williams v. Smith*, 781 F.2d at 323-24; *Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989). "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy. *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir. 1995). "Mere allegations that defendants knew of the wrongs does not establish personal involvement." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 355 (S.D.N.Y. 2000) *citing De Jesus v. Sears, Roebuck and Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

Therefore, because these defendants were not actively involved in any of the incidents which allegedly gave rise to the plaintiff's Complaint, Defendants Weir, Taylor, Perkins and Melbourne are entitled to summary judgment.

V. **PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AGAINST THE DEFENDANTS ARE IMPROPER**

It is well established law that the plaintiff's claims against the defendant's in their official capacity are barred. Absent a waiver by the State, or valid Congressional override, the Eleventh Amendment bars a damage action against a state actor in federal court. *Kentucky v. Graham*, 413 U.S. 159, 169, 105 S.Ct. 3099, 3107 (1985); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct.

1347, 1355 - 1356 (1974); *Ford Motor Company v. Department of The Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350 - 351 (1945). "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057 (1978) (Per Curiam) (relief against State of Alabama and Alabama Board of Corrections overturned).

The Eleventh Amendment bar applies when a state or state officials are sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 170, 105 S.Ct. 3099, 3107 (1985); *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328 - 2329 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355 - 1356 (1974). Indeed, a cause of action under 42 U.S.C. §1983 requires that it be brought against a person; neither a state or a state agency is a person within the meaning of 42 U.S.C. §1983, nor is a state official sued in his official capacity for money damages. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 - 71, 109 S.Ct. 2304, 2311 - 2312. And even Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Thus, those claims by the plaintiff against the defendant's in their official capacity must be dismissed, as they are barred by the Eleventh Amendment.

### VI. EVEN ASSUMING ARGUENDO, THAT THE PLAINTIFF'S RIGHTS WERE VIOLATED BY ONE OR MORE OF THE DEFENDANTS, THEY ARE NEVERTHELESS, ENTITLED TO QUALIFIED IMMUNITY

The shield of qualified immunity generally protects government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *O'Hagan v. Soto*, 725 F.2d 878, 879 (2d Cir. 1984). As a general rule, state officials are entitled to qualified immunity if (1) their conduct does not violate

clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. *Oliviera v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994). Immunity ordinarily should be decided by the court. *Id.*, 23 F.3d at 649 (quoting *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991)). To determine whether a particular right was clearly established at the time the defendant acted, a court should consider; (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), *cert. denied*, 503 U.S. 961, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

Because the actions of the defendants were at all times reasonable, they are entitled to qualified immunity. Indeed, the circumstances during, and immediately following the plaintiff's assault on Morris Neal were violent and rapidly evolving, requiring split-second decisions and actions. In addition, the actions of the nurses were reasonable as well, given that there was no medical reason to order x-rays, but as soon as the authority was provided, the plaintiff not only received the x-rays, but subsequent medical attention when it became known that an injury existed.

Therefore, given that the actions of the defendants were those of reasonable officials, they are entitled to qualified immunity, and thus summary judgment in their favor.

.

## **CONCLUSION**

For the foregoing reasons, summary judgment should be ordered in favor of the defendants on all of the plaintiff's claims.

        DEFENDANTS
        MAURICE BUTLER, ET AL

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL


By: __/s/_____
Robert B. Fiske, III
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal Bar #17831
e-mail: robert.fiske@po.state.ct.us


## CERTIFICATION

      I hereby certify that a copy of the foregoing motion was mailed this, the 4th day of August, 2004, to:

Mr. Kevin Tucker #94084
Northern Correctional Institution
P.O. box 665
Somers, CT 06071-0665


__/s/_____
Robert B. Fiske, III
Assistant Attorney General