UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


KEVIN S. TUCKER, SR.          :
                              :              PRISONER
        v.                    :   Case No. 3:02CV1357 (WWE)
                              :
CAPTAIN MAURICE BUTLER, et al.[1] :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[2]

Plaintiff Kevin S. Tucker, Sr. ("Tucker"), confined at the

Northern Correctional Institution in Somers, Connecticut,

commenced this civil rights action pursuant to 28 U.S.C. § 1915.

He alleges that defendant Butler failed to protect him from harm

by another inmate, defendants Lloyd, Weir, Taylor, Lindsey,

Perkins, Melbourne and Castonguay used excessive force against

him or permitted such force to be used and defendants Hill and

Katz-Feinberg were deliberately indifferent to his serious

---

[1]The named defendants are Captain Maurice Butler; Lieutenant
Lloyd; Captain Kim Weir, incorrectly named as Wier; Correctional
Officer Taylor; Correctional Officer Lindsey; Correctional
Officer O'Dell; Correctional Officer Perkins; Correctional
Officer Melbourne; Correctional Officer Castonguay, incorrectly
named as Catongany; Nurse Nancy Hill; and Nurse Practitioner
Saundra Katz-Feinberg.  All defendants are named in their
individual and official capacities.

[2]Although, defendants captioned their motion "Motion to
Dismiss," they attached a Local Rule 56(a)1 Statement and
captioned their memorandum as supporting a motion for summary
judgment.  In addition, they filed a notice informing Tucker on
the proper response to a motion for summary judgment.  The court
considers the caption on the motion to be a typographical error.

medical needs.  Defendants have filed a motion for summary judgment on several grounds.  For the reasons that follow, defendants' motion will be granted in part and denied in part.

I.    Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317,

2

323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51

3

F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of
New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party
may not rely on conclusory statements or an argument that the
affidavits in support of the motion for summary judgment are not
credible).  A self-serving affidavit which reiterates the
conclusory allegations of the complaint in affidavit form is
insufficient to preclude summary judgment.  See Lujan v. National
Wildlife Fed'n, 497 U.S. 871, 888 (1990).

II.  Facts[3]

On January 8, 2002, Tucker was assigned to share a cell with
inmate Morris Neal ("Neal").  During the day, when Neal held open
the food trap in the cell door, defendant Butler went to the
cell.  Neal told defendant Butler that he and Tucker could not
get along and did not want to share a cell.  Neal also stated
that he was scheduled to be released in two weeks and did not
want to have any problems with Tucker.  Defendant Butler told
Neal that he had to comply with department procedures to obtain a
cell change.  The procedures required inmates requesting cell

---

[3] The facts are taken from defendants' Local Rule 56(a)1
Statement.  Despite specific notice from defendants which
included a copy of Local Rule 56, (see doc. #18), Tucker has not
included a Local Rule 56(a)2 Statement with his opposition.
Thus, defendants' facts are deemed admitted.  See D. Conn. L.
Civ. R. 56(a)1 ("All material facts set forth in said statement
will be deemed admitted unless controverted by the statement
required to be served by the opposing party in accordance with
Rule 56(a)2.")

changes to file a written inmate request.

Later that day, between 3:30 p.m. and 4:15 p.m., Tucker and Neal were offered the opportunity to shower.  Tucker refused. Neal was handcuffed and escorted to the shower.  When Neal returned to the cell, correctional staff handcuffed Tucker before opening the cell door.  When the door was opened, Correctional Officers Daire and Lindsey escorted Neal inside the cell and removed his leg irons only.  Neal still was handcuffed with his hands behind his back.  When the cell door was secured, Tucker backed up to the food slot to have his handcuffs removed.  One of the correctional officers removed Tucker's handcuffs.  Tucker then refused to permit Neal to approach the food slot to have his handcuffs removed.

While Tucker was preventing Neal from approaching the food slot, he told the correctional officers they should "get the brass."  Defendant Lindsey went to notify a supervisor while Correctional Officer Daire remained at the cell door.  As soon as defendant Lindsey left, Tucker attacked Neal and began stabbing him repeatedly with a pen.  Neal's hands still were handcuffed behind his back, so he was unable to defend himself. Correctional Officer Daire called a "code blue" and ordered Tucker to stop the assault.  Tucker ignored the order and continued to attack Neal until additional correctional staff

responded and were able to enter the cell and separate the two inmates.

Several officers got hold of Neal and secured him against a wall in the cell.  Correctional Officer Daire grabbed Tucker by the torso and began moving him toward the cell door.  Defendant Lindsey assisted defendant Daire by pushing Tucker to remove him from the small cell.  Once on the tier, defendants O'Dell and Castonguay assisted in escorting Tucker to the prone position. Defendant Castonguay secured Tucker's legs while defendants Lindsey and O'Dell secured his arms and torso.  Correctional officers who are not defendants in this case applied handcuffs, leg irons and tether chains to Tucker.  Defendant Lloyd was present and gave Tucker verbal directions.  She did not participate in Tucker's removal from the cell or takedown to the tier floor.

After Tucker was restrained, defendant Lloyd directed defendants Lindsey and O'Dell to assist him to his feet and escort him to the medical screening room for evaluation by medical staff.  At approximately 4:30 p.m., Nurses Michael Lyman and Nancy Hill examined Tucker and treated him for superficial wounds to his lower lip, nose, knuckles and the right side of his forehead.  Defendant Lloyd then interviewed Tucker about the incident.  Tucker told her that he felt threatened by Neal but

did not provide any details.  He admitted that he had not
reported the threats to any supervisory correctional staff.  In
response to a question about his injuries, Tucker told defendant
Lloyd that he was hurt in the head.  He did not indicate that
excessive force had been used against him during the takedown,
that any correctional officer had kicked him in the ribs, stood
on his ribs or bent back his finger.  Defendant Lloyd observed no
difficulty in movement and Tucker reported no pain when walking,
sitting or standing.

Next, Neal was examined by medical staff.  The examination
revealed the following injuries as a result of the assault:  a
2.5 cm laceration below the right temple, a small laceration
inside his mouth, two puncture wounds to the back of his neck,
two puncture wounds to the upper back and one puncture wound to
the shoulder.

Following the medical examination, Tucker was escorted to a
cell and strip searched.  In-cell restraints were applied.  As a
result of the assault, defendant Lloyd placed Tucker on in-cell
restraint status and a fifteen minute watch.  He received a Class
A disciplinary report for assault.  Later that evening, Tucker
was examined by Nurse Dudley.  The examination revealed no
additional injuries and Tucker made no complaints.

III. <u>Discussion</u>

Tucker alleges that defendant Butler failed to protect him from harm, defendants Lloyd, Weir, Taylor, Lindsey, O'Dell, Perkins, Melbourne and Castonguay used excessive force against him or failed to prevent the use of excessive force and defendants Hill and Katz-Feinberg were deliberately indifferent to his complaints of rib and chest pain and a broken finger.

A.    <u>Official Capacity Claims for Damages</u>

Defendants argue that all claims for damages asserted against them in their official capacities are barred by the Eleventh Amendment

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  <u>See</u> <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity.  <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery

8

would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Tucker has named all defendants in their official and individual capacities and does not indicate in which capacity he seeks damages.  The Eleventh Amendment bars an action for damages against defendants in their official capacities.  Thus, defendants' motion for summary judgment is granted as to all claims for damages against them in their official capacities.

B.   Failure to Protect

In his first cause of action, Tucker claims that defendant Butler failed to protect him from the use of excessive force by other defendants because he did not separate Tucker and Neal after Neal refused to close the food slot and told defendant Butler that he and Tucker could not get along and could not share a cell.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "'take reasonable measures to guarantee safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  This duty includes protecting inmates from harm at the hands of other inmates.  See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

To establish a constitutional violation, a prisoner must

show that he was "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, and that the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. See Hayes v. New York City Dep't Of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.").

Defendants argue that, as the attacker, Tucker cannot state a claim for failure to protect him from assault by another inmate. The videotape provided by defendants includes a statement by Tucker indicating that he attacked Neal. Thus, the court agrees that any claim for failure to protect from harm by another inmate is not cognizable.

In his complaint and opposition papers, Tucker attempts to hold defendant Butler responsible for the alleged excessive force used against him by correctional staff. He argues that if

defendant Butler had separated Tucker and Neal after the food slot incident earlier in the day, he would not have attacked Neal and would not have been subjected to the use of excessive force.

Following the earlier incident, defendant Butler stated that if either inmate wanted a cell change, he must follow departmental policy and submit a written request. Neither inmate did so. Instead, Tucker attacked Neal while Neal was handcuffed with his hands behind his back. Correctional officers responded to the scene and used force to separate and subdue the two inmates. Defendant Butler was not present during the incident. Any decision regarding the amount of force required was made by the correctional staff involved in the incident.

If defendant Butler were present, he could be held responsible for these decisions. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated **in his presence** by other officers.") (emphasis added). He was not. In addition, as a supervisory correctional official, defendant Butler could be liable for damages if he knew or had reason to know that excessive force were being used and failed to intervene in the alleged use of force. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); McCoy v. Goord, 255 F. Supp. 2d 233, 262

11

(S.D.N.Y. 2003). Again, defendant Butler was not present and did not know about the alleged use of excessive force. There is no evidence to show that defendant Butler should have anticipated that Tucker, who never reported any threats by Neal to correctional staff, would attack Neal instead of following institutional procedures to request a cell change. Defendants' motion for summary judgment is granted as to the claims against defendant Butler.

The only reference to defendants Weir and Taylor is in the description of the parties. Tucker states that defendant Weir "had knowledge of the problem but failed to act professionaly and handle the situation until some got hurt." He states that defendant Taylor acted unprofessionally because "she told the captain it was wrong for what he Butler was doing and she did nothing more." The court assumes that Tucker also is asserting a failure to protect claim against these defendants.

Tucker has provided no evidence showing that he informed defendant Weir of his problems with Neal or that defendant Weir was present during the incident. In addition, he presents no evidence to support his allegation that defendant Taylor was aware of any problems between Tucker and Neal. There is no reference to either defendant in the incident reports submitted by defendants and no indication that either defendant anticipated

12

that Tucker would assault Neal.  Thus, the court concludes that
Tucker fails to meet his burden of demonstrating the existence of
a genuine issue of material fact regarding his claims against
defendants Weir and Taylor.  Defendants' motion for summary
judgment is granted as to the claims against defendants Weir and
Taylor.

     C.   <u>Use of Excessive Force</u>

In his second cause of action, Tucker claims that defendants
Lindsey, O'Dell, Perkins, Melbourne, Taylor, Lloyd and Castonguay
used excessive force against him when they removed him from the
cell by picking him up and "body slamming him on his face and
head." (Compl. at ¶¶ 31-32.)  Tucker alleges further that
defendants Castonguay and Lindsey kicked him in the ribs, knelt
on his ribs and stood on his ribs.

The incident reports filed by defendants indicate that
defendant Perkins was one of the correctional officers securing
Neal and defendant Melbourne was videotaping Neal.  Thus, these
two defendant had no involvement in securing Tucker and did not
use excessive force against him.  Defendants' motion for summary
judgment is granted as to all claims against defendants Perkins
and Melbourne.

Defendants concede that force was used to remove Tucker from
the cell and restrain him, but argue that the force used was

13

necessary to subdue Tucker because he was stabbing his handcuffed cellmate and had refused several orders to stop.  They contend that Tucker's minimal injuries show that only limited force was used.

When confronted by a disturbance, correctional officers must balance the threat the disturbance poses to inmates, staff and others against the harm the inmate might suffer if force is used. This decision is made quickly and under pressure.  When considering the use of force by correctional officers, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (internal quotation marks and citation omitted).  The court considers objective and subjective components to an excessive force claim.  See id. at 8.  The objective component relates to the level of physical force used against the inmate and whether that force is repugnant to the conscience of mankind. See id. at 9-10.  The subjective component focuses on whether the correctional officers had a "wanton" state of mind when they were applying the allegedly excessive force.  See id. at 8.

An Eighth Amendment claim for use of excessive force may be barred when the correctional staff uses de minimis force and the inmate suffers only de minimis injuries.  See Sims v. Artuz, 230

14

F.3d 14, 22 (2d Cir. 2000) (noting that "a de minimis use of force will rarely suffice to state a constitutional claim" because Eighth Amendment prohibition against cruel and unusual punishment does not extend to "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind")(citations and internal quotation marks omitted); Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997) (holding that allegations of being "bumped, grabbed, elbowed and pushed" by a correctional officer, fail to state a claim for use of excessive force).

An excessive force claim cannot be dismissed, however, merely because an inmate did not suffer serious injuries. See Perkins v. Brown, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003) (acknowledging that claim of excessive force may be established even if the victim does not suffer serious or significant injury) (citations omitted). The court may use the extent of the inmate's injuries as one factor in determining whether the use of force could have been thought necessary by correctional staff or demonstrated an unjustified infliction of harm. See Hudson, 503 U.S. at 7. Other factors to be considered are the need for use of force, the threat perceived by correctional staff and the relationship between the perceived threat and the amount of force used. See id.

The incident report states that Tucker was stabbing Neal with a pen while Neal was handcuffed with his hands behind his back.  Correctional staff immediately summoned assistance and, to avert additional injuries to Neal, entered the cell once a sufficient number of correctional officers were present.  The officers acted quickly to separate and subdue the inmates.  Neal was subdued in the cell and Tucker was removed from the cell.  As shown on the videotape, there was not sufficient room in the cell to bring two inmates to the prone position in the cell.

Defendants may have pushed Tucker to remove him from the cell.  Tucker has presented no evidence, however, to support his allegation that he was "body-slammed" head first onto the floor.  As defendants state, the minimal injuries to Tucker's head and nose support defendants contention that Tucker was not slammed into the concrete floor.  In addition, Tucker has presented no evidence to suggest that the actions of the defendants in removing him from the cell and into the prone position were malicious.  Defendants were responding quickly to a violent assault and trying to subdue Tucker to restore order to the unit.  The court concludes that Tucker has failed to meet his burden of demonstrating a genuine issue of material fact concerning his removal from the cell.  Defendants' motion for summary judgment is granted as to the excessive force claim regarding the removal

16

of Tucker from the cell.

In his fourth cause of action, Tucker contends that defendant O'Dell broke his finger by applying pressure to his right hand and finger.  The videotape provided by defendants begins with Tucker on the floor of the tier being secured in handcuffs and leg irons.  Defendants Lindsey and O'Dell are identified as the officers controlling the upper arms and torso. Tucker does not appears to be struggling against the correctional officers.  Although the tier is very noisy, it appears that Tucker is complaining about pain in his arm or hand.  Medical records reveal that Tucker's finger was fractured.  There is no medical evidence describing the fracture or indicating whether the fracture is consistent with the alleged force applied by defendant O'Dell.  Defendants have not provided an affidavit from defendant O'Dell or any evidence addressing this injury.  Based upon the evidence provided, the court cannot conclude that defendant O'Dell is entitled to summary judgment on this claim. Accordingly, defendants' motion is denied as to the claim against defendant O'Dell for use of excessive force that resulted in a fractured finger.

D.    <u>Deliberate Indifference to Serious Medical Needs</u>

In his third cause of action, Tucker contends that defendants Katz-Feinberg and Hill were deliberately indifferent

17

to his claims of a broken finger and pain in his ribs.  He alleges that defendant Katz-Feinberg told him that nothing was wrong with his ribs or finger.  He also alleges that defendants Katz-Feinberg and Hill refused to order x-rays until he wrote to defendant Katz-Feinberg's supervisor, Dr. Rayford, the Director of Health in the Central Office.  He argues that he would not have received treatment if he had not written the letter.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim, however, Tucker must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to his serious medical need.  Id. at 106.  He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429

U.S. at 106.  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06). Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or

patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Tucker also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Tucker has provided no medical testimony or any other evidence to support his claims that defendants Hill and Katz-Feinberg were deliberately indifferent to his claims of injury to his ribs and a broken finger. He has provided no evidence to

20

indicate that he ever requested treatment for these two injuries from either defendant.  There is no evidence that defendant Katz-Feinberg treated Tucker until she examined him on February 6, 2002.  The only evidence in the record regarding treatment by defendant Hill is the initial medical examination following the incident on January 8, 2002.  The videotape of the examination reveals that Tucker stated that his injuries were to his head. He did not identify any injuries to his finger or his ribs.  In addition, there is no evidence to support Tucker's allegation that defendant Hill witnessed the incident.

Exhibits attached to the complaint reveal the following additional facts.  On January 13, 2002, Tucker submitted an Inmate Request Form seeking medical treatment for pain in his ribs.  The attached copy of a portion of Tucker's medical records reveals that he was seen by medical staff for this complaint on January 17, 2002.  The medical records also indicate that Tucker was seek for his complaint of a broken finger on January 9, 2002. An x-ray was ordered that day and a splint was placed on the finger.  On January 10, 2002, Dr. Wright examined Tucker's finger.  The x-ray, taken the following day, confirmed a chip fracture.  Tucker's letter to Dr. Rayford, complaining that he had not receive treatment was dated January 27, 2002, after Tucker had received treatment for his finger and been seen about

his rib pain.  Tucker was seen a second time for rib pain on January 29, 2002.  All of this treatment was provided by other medical staff.

Allegations in a complaint are insufficient to oppose a properly supported motion for summary judgment.  See, e.g., Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)(party opposing summary judgment may not rely on "mere allegations or denials" contained in his pleadings). Tucker fails to present any evidence to suggest that defendants Katz-Feinberg and Hill were aware of his rib or finger injuries at any time prior to his receiving treatment for those injuries. The court concludes that Tucker has failed to meet his burden of providing evidence of the existence of a genuine issue of material fact regarding the medical treatment provided following his assault on inmate Neal.  Accordingly, defendants' motion for summary judgment is granted as to all claims against defendants Hill and Katz-Feinberg.

E.    Conspiracy

Finally, in his fifth cause of action, Tucker contends that all defendants conspired to cause him harm by ignoring a "life threatening situation by not making a cell change."  Defendants have not addressed this claim in their motion for summary judgment.  However, the court concludes that this claim should be

dismissed.

A claim of conspiracy to violate civil rights requires more than general allegations.  See Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993) (citations omitted); see also Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (vague, prolix allegations without pleading any overt acts is insufficient to state a claim of conspiracy); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (vague and conclusory statements without specific facts are not enough).  This requirement is not changed by the Supreme Court's decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), which proscribes the application of "heightened pleading standard" in civil rights cases.  Cases decided after Leatherman continue to hold that a claim of conspiracy must contain more than mere conclusory allegations to withstand a motion to dismiss.  Rather than constituting a heightened pleading standard, the requirement merely implements Rule 8(a)(2), Fed. R. Civ. P., which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (same).

Tucker has presented no evidence in his complaint or in opposition to the motion for summary judgment regarding his conspiracy claim.  Without documentary support, his claims of conspiracy consist only of unsupported allegations and are conclusory at best.  Thus, Tucker fails to state a claim for conspiracy.  The conspiracy allegations are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted.

IV.  Conclusion

Defendants' motion for summary judgment [**doc. #19**] is **DENIED** as to the claim against defendant O'Dell for use of excessive force that resulted in a fractured finger and **GRANTED** as to all other claims.  Tucker's conspiracy claim is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Tucker's motion for appointment of counsel [**doc. #27**] is **GRANTED.**  The Clerk is directed to make diligent efforts to locate an attorney from the Civil Pro Bono Panel to represent Tucker at trial.

**SO ORDERED** this __19th_____ day of January, 2005, at Bridgeport, Connecticut.

_____/s/_____

____

Warren W. Eginton
Senior United States District Judge